UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:06CR430-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| JOSEPH DIBRUNO, JR. ) | |
| ) | |

THIS MATTER is before the Court upon the motion of Defendant Joseph DiBruno, Jr., (Doc. No. 15) to revoke Magistrate Judge David C. Keesler's Order of Detention Pending Trial (Doc. No. 11). For the reasons set forth below, upon an independent and *de novo* review,[1] the Court denies Defendant's motion and affirms the Magistrate Judge's Order of Detention.

## BACKGROUND

Defendant DiBruno is one of three defendants in a twenty-five (25) page, thirty-seven (37) count speaking Bill of Indictment, describing a complex securities, investment and bankruptcy fraud scheme and money laundering conspiracy. While Defendant's co-defendants were released on bond, the government sought and the Magistrate Judge detained Defendant pending trial under the Bail Reform Act of 1984. Judge Keesler, weighing the facts that the Defendant: (1) did not have a criminal record; (2) did not flee while he knew he was under criminal investigation; and (3) had an experienced Probation Officer's recommendation for bond under specific terms and conditions,[2] nonetheless denied bond holding,

---

[1] *United States v. Stewart*, 19 Fed. Appx. 46, 48, 2001 WL 1020779 (4th Cir. 2001).

[2] Transcript of Detention Hearing Before the Honorable David C. Keesler, November 22, 2006 (hereinafter "Tr.") at 29-30.

On the other side of the ledger, the government makes a strong argument that [1] the evidence in the underlying case is compelling. [2] That as charged, the case reflects that the defendant could face as much as an offense level 43.

[3] The government's case alleges a loss amount of $3 million and 100 victims. And further, [4] the government make *(sic)* the argument that the defendant's past history and the allegations in the case itself reflect that he is not going to comply with the conditions set by the Court.

Now, in the end, I find this would be a close call. But on the question whether the Court could set conditions that would reasonably assure the safety of the community and the defendant's reappearance for court, I find that it cannot. I'm taking into account particularly the past history of this defendant with the courts in this district. My former colleague, Judge McKnight, used to say, "The past is prologue. The best predictor of a defendant's future behavior is his past behavior."

Tr. at 30-31. Thus, based primarily on the four factual findings set forth above, Magistrate Judge Keesler detained Defendant pending trial.

LEGAL ANALYSIS

The Bail Reform Act of 1984 (hereinafter "the Act")[3] authorizes and sets forth the procedures for a judicial officer to order the release or detention of an arrested person pending trial, sentence, and appeal. The Act has been amended several times, most recently in the summer of 2006.

If and when a pre-trial detention hearing should be held is set forth in section 3142(f). Under section 3142(f)(1), a court must hold a detention hearing when: one, the government moves for detention; and, two, the case involves one of the crimes or conditions set forth in section 3142(f)(1)(A) - (D).[4] In all other cases, including the instant case, a court must hold a detention hearing when: one, the government moves for detention; and, two, the case "involves -- (A) a serious

---

[3] 18 U.S.C. §§ 3141-3150.

[4] These crimes and/or conditions include "crimes of violence," offenses where the maximum sentence includes life imprisonment or death, drug offenses with maximum sentences of ten years or more, and where the defendant has been convicted in federal or state court of two or more of the crimes described in subsections (A) to (C).

risk that the person will flee; or (B) a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."[5]  18 U.S.C. § 3142(f)(2).  In order to detain a defendant pending trial, the judicial officer must "find[] that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  *Id.* § 3142(e).  Furthermore, "[w]ith regard to the risk of flight as a basis for detention, the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings."  *Stewart*, 19 Fed. Appx. at 48-49 (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985); *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985)(noting that, under the Act, the clear and convincing evidence standard applies only to a determination that "no condition or combination of conditions will reasonably assure the safety of any other person and the community")).

Finally, the factors to be considered in determining whether to release a defendant pending trial are set forth in section 3142(g).  Those factors include:

> (1) nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Stewart,* 19 Fed. Appx. at 48.

---

[5]The court *sua sponte* can order a detention hearing without motion of the government if the court believes the same serious risk(s) exist.  *Id.* § 3142(f)(2).

FINDINGS OF FACT

This Court in performing an independent and *de novo* determination of the facts in this case has: (1) held a new detention hearing; (2) reviewed in full the transcript of the Magistrate Judge's detention hearing; and (3) reviewed in full the twenty-five page, thirty-seven count Bill of Indictment. From that record, the Court, based on a preponderance of the evidence, makes the following findings of fact regarding Defendant's risk of flight:

1. The fundamental nature of Defendant's alleged misconduct is a complex and broad fraud scheme causing $3.3 million in loss to over 100 victims.

2. Defendant, if convicted of some or all of the charges in the Bill of Indictment, based on the government's proffer of his specific involvement in the scheme, could face a United States Sentencing Guideline offense level of 43, resulting in an advisory sentence of life imprisonment.[6]

3. Defendant has never had gainful employment but always has been associated with one of the business or corporate entities which the government and the Bill of Indictment allege are sham enterprises.[7]

4. Many of Defendant's family members were allegedly involved in or had knowledge

---

[6] At this Court's detention hearing, the government proffered the following reasons, *inter alia*, for an offense level 43 -- a loss amount of $3.3 million; in excess of 100 victims; vulnerable victims in the form of elderly investors; use of a minor's account to launder money; sophisticated means; obstruction arising from the bankruptcy fraud; and a leadership and/or management role.

[7] The government noted that the Internal Revenue Service has no record of Defendant ever filing an income tax return, and no entity has ever filed for Defendant an IRS Form 1099 for independent contractor services or a W-2 for service as an employee.

of the alleged fraud scheme for which the Defendant is charged.[8]

5. Defendant has a history of defying court orders in the Bankruptcy proceedings in this District.

6. Based on the government's investigation, there apparently is somewhere between $500,000 and $1 million in missing or unaccounted for currency (including $350,000 worth of cashiers checks that were cashed during or around the time of Defendant's bankruptcy filing), which, if Defendant has clandestine possession, could substantially facilitate flight.

7. Based on the government's investigation, Defendant had an ability to set up offshore accounts, although the evidence was inconclusive as to whether he actually had offshore accounts.[9]

8. Defendant has the sophistication to understand the legal nuisances of business incorporation and other formalities of corporate formation, which could, after flight, assist him in reestablishing himself in another location.

In reaching these findings of fact, the Court, *inter alia*, relied particularly on: the nature and circumstances of the charged offense (18 U.S.C. § 3142(f)(1)); the strength of the evidence against Defendant (*id.* § 3142(f)(2)); Defendant's character and past conduct, especially in light of his experience with failing to comply with court orders (*id.* § 3142(f)(3)(A)); Defendant's family ties

---

[8] Defendant's father and cousin are charged as co-conspirators, and according to the government's proffer at this Court's detention hearing, Defendant's mother and aunt were not charged but were "close, very close." Suspicious moneys were laundered into Defendant's mother's account, which she subsequently withdrew as $170,000 in currency. The government further proffered that Defendant's aunt also cashed funds for Defendant.

[9] *Cf. United States v. Bethea*, 5:05-cr-00207, Order Granting Motion to Revoke Bond, Doc. No. 12 (June 8, 2005) (unpublished) (finding that offshore accounts provide evidence of ability to flee).

(or in this case the Defendant's family's questionable involvement or knowledge of the scheme) (*id.* § 3142(f)(2)(A)); and Defendant's employment or lack thereof (*id.* § 3142(f)(2)(A)).

CONCLUSION

Based on these findings of fact, the government met its initial burden under section 3142(f)(2) that there was "a serious risk that the [Defendant] w[ould] flee," justifying its original motion before the Magistrate Judge for a detention hearing.

Also based on these findings of fact, the government has shown by a preponderance of the evidence that there is "no condition or combination of conditions" which would "reasonably assure the appearance of the [Defendant] as required" for trial under sections 3142(e) and 3142(f).

Since there is no condition or combination of conditions assuring Defendant's appearance, section 3142(e) requires the Court to "order the detention of the [Defendant] before trial."

Thus, the Court, after an independent and *de novo* review of the Magistrate Judge's Order of Detention Pending Trial, HEREBY AFFIRMS that Order of Detention Pending Trial.[10]

Signed: January 17, 2007

Frank D. Whitney
United States District Judge

---

[10] The Court finds it unnecessary to address: (1) whether there was "a serious risk the [Defendant] w[ould] obstruct justice or attempt to obstruct" if released pending trial, justifying the government's original motion to detain the Defendant (18 U.S.C. § 3142(f)(2)); and (2) whether Defendant, as an alternative to being a risk of flight, was an economic risk to the safety of the community (18 U.S.C. § 3142(e)). Because the Court concludes that there is substantial evidence as to Defendant's serious risk of flight, that alone was sufficient to justify the detention hearing under section 3142(f)(2) and to detain Defendant pending trial under section 3142(e).